# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

MARQUES LINDSAY,                        :
     Plaintiff,                     :          CIVIL CASE NO.
                                   :          3:19cv1486(JCH)
    v.                             :
                                   :
ROLLIN COOK, ET AL.,                    :          DECEMBER 7, 2021
     Defendants.                    :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The plaintiff, Marques Lindsay ("Lindsay"), initiated this action by filing a

Complaint under section 1983 of title 42 of the United States Code against twenty-four

employees of the State of Connecticut Department of Correction.[1]  At the time he filed

the Complaint, he was a sentenced inmate confined at the MacDougall-Walker

Correctional Institution ("MacDougall-Walker").  The docket reflects that, as of

November 20, 2019, prison officials had discharged Lindsay from a Department of

Correction facility.  He currently resides in Bridgeport, Connecticut.

On July 13, 2020, the court dismissed the Eighth and Fourteenth Amendment

claims asserted against the defendants in their official capacities; severed and

dismissed the Eighth Amendment excessive force and denial of medical treatment

---

[1]  The Complaint lists the following defendants: Commissioner Rollin Cook, Deputy
Commissioner Cepelak, District Administrator Jane Doe, Director of Security Santiago, Director of
Offender Classification and Population Management Miaga, Security Risk Group Coordinators Aldi and
Papoosha, Wardens Cortez, Faucher, and Jane Doe, Deputy Wardens Cotta and Carlos, Captain
Oganda, Lieutenants Kelly, Michaud, Bragdon and Stadalnik, Disciplinary Investigator Dousis, Counselor
Supervisor/Unit Manager Cronin, Correctional Officers Messier, Greene, and Fiore, Dr. Yesu, and
Registered Nurse Janine Brennan.  Compl. (Doc. No. 1).

claims asserted against defendants Fiore and Cronin in their individual capacities; dismissed the Eighth Amendment conditions of confinement and failure to protect claims and Fourteenth Amendment due process claims asserted against defendants Cook, Cepelak, Santiago, Miaga, Aldi, Papoosha, Cortez, Faucher, Cotta, Carlos, Oganda, Kelly, Michaud, Bragdon, Stadalnik, Dousis, Messier, Greene, Cronin, Jane Doe 1, and Jane Doe 2 in their individual capacities; but permitted the Eighth Amendment deliberate indifference to mental health needs claim asserted against defendants Dr. Yesu and Registered Nurse Brennan, in their individual capacities, to proceed.  See Initial Review Order (Doc. No. 15).

Defendants Yesu and Brennan move for summary judgment.  For the reasons set forth below, the motion is granted.

## II.    LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  Anderson, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ."  Giordano v. Market Am., Inc., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its

2

motion and identifying the admissible evidence it believes demonstrates the absence of a genuine dispute as to any issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (internal quotation marks and citation omitted).

Although the court is required to read a self-represented party's papers liberally and interpret them "to raise the strongest arguments that they suggest", Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment.  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

### III.    FACTS[2]

Lindsay arrived at Corrigan Correctional Center ("Corrigan")[3] on November 8,

2018 and remained at Corrigan until February 7, 2019.  Defs.' L.R. 56(a)1 ¶ 2.  During

this three-month period, Dr. Yesu and Registered Nurse Brennan were employed at

Corrigan.  Id.  Nurse Brennan was the Health Services Administrative Remedies

Coordinator at Corrigan.  Defs.' L.R. 56(a)1 ¶ 5; Brennan Decl. ¶ 2, Ex. B, Doc. No. 34-

1.

On November 30, 2018, a prison official placed Lindsay in a cell in the restrictive

housing unit.  Compl. at 8 ¶ 35 (Doc. No. 1).  On December 6, 2018, Lindsay spoke to a

different official about his request to be placed in protective custody due to threats made

---

[2]  The facts are taken from the Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1") (Doc. No. 31-6); Exhibits A through D, (Doc. Nos. 31-1, 31-3, 31-4, and 34-1), filed in support of the Local Rule 56(a)1 Statement.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  D. Conn. L. Civ. R. 56(a)2 and 56(a)3.  Defendants Yesu and Brennan informed Lindsay of these requirements.  See Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 31-7.

Lindsay has neglected to file a memorandum in opposition to the Motion for Summary Judgment or a Local Rule 56(a)2 Statement.  Because Lindsay has not filed a Local Rule 56(a)2 Statement, the facts included in the Local Rule 56(a)1 Statement filed by Defendants Yesu and Brennan are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").  The facts are also drawn from the allegations asserted in Complaint, (Doc. No. 1), which Lindsay certified under penalty of perjury were true and accurate, to the extent that the allegations are based on Lindsay's personal knowledge.  See Patterson v. Cty. of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (holding that a verified pleading that contains "allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment.").

[3]  At the time of Lindsay's confinement at Corrigan, the facility was known as Corrigan-Radgowski Correctional Institution.  On October 6, 2021, the Department of Correction closed Radgowski Correctional Institution due a reduction in the inmate population.  See https://portal.ct.gov/DOC/Facility/Corrigan-Radgowski-CC.

against him by inmate gang members.  Id. at 12 ¶ 39.  After returning to his cell in the restrictive housing unit, Lindsay felt paranoid and anxious and experienced feelings of suicide and homicide but was eventually able to calm himself down.  Id. ¶ 40.  Later that evening, Lindsay sent an inmate request to the mental health unit seeking "psychiatric" medication.  Id.

On December 11, 2018, Lindsay submitted an inmate request to the mental health unit indicating that his "mental was unhealthy"  Id. at 14 ¶ 45.  He stated that his mother had died, his friend had committed suicide, and he did not know the identities of the individuals who had assaulted him in September 2018, prior to his incarceration. Id. at 14 ¶ 45.  He requested medications to improve his mental health and noted that, prior to his admission to the Department of Correction, medical providers had prescribed different types of medications to treat his mental health conditions.  Id.

On December 13, 2018, Nurse Brennan responded to Lindsay's inmate requests addressed to the mental health unit.  Id. ¶ 46.  Nurse Brennan noted that Lindsay had neglected to inform medical providers at the facility in which he had previously been confined about any mental health medications that had been prescribed to him prior to his incarceration and informed Lindsay that she could not renew medications that were not currently prescribed to Lindsay.  Id.

The following day, Dr. Yesu stopped at Lindsay's cell during his tour of the restrictive housing unit.  Id. at 15 ¶ 47.  Lindsay described the injuries that he had suffered during an assault that had occurred prior to his incarceration and stated that the conditions in the restrictive housing unit as well as the threats that other inmates

had made towards him were affecting his mental health.  Id.  Lindsay suggested that staff members in the mental health unit were aware "of the voices that he was hearing in his head" but had failed to adequately evaluate or treat him.  Id.  Dr. Yesu asked Lindsay if he felt like harming himself.  Id.  When Lindsay replied no, Dr. Yesu walked away.  Id.

On January 8, 2019, Dr. Yesu stopped to speak to Lindsay during his tour of the restrictive housing unit.  Id. at 22-23 ¶ 62.  Lindsay informed Dr. Yesu that it had been thirty days since he had written to the mental health unit regarding the "unhealthy" state of his mental well-being and his need for "psychiatric" medication and treatment.  Id. at 23 ¶ 62.  Approximately thirty minutes after this conversation, correctional officers escorted Lindsay to a medical treatment room in the restrictive housing unit, Dr. Yesu assessed Lindsay's mental health, and Lindsay signed an authorization permitting treatment providers at Corrigan to obtain copies of his mental health records.  Id. at 23 ¶ 63.

On February 5, 2019, Dr. Yesu stopped at Lindsay's cell.  Id. at 33 ¶ 81. Because prison officials had placed the restrictive housing unit on lockdown, Lindsay was not permitted to leave his cell, and Dr. Yesu could not perform an assessment of Lindsay's mental health in a private setting.  Id.

On February 7, 2019, prison officials at Corrigan transferred Lindsay to MacDougall-Walker.  Defs.' L.R. 56(a)1 ¶ 2.  Lindsay had no contact with Nurse Brennan or Dr. Yesu after his transfer to MacDougall-Walker.  Id. ¶ 3.

On February 28, 2019, a psychiatrist and a psychiatric nurse assessed Lindsay's mental health.  Compl. at 34 ¶ 87.  They prescribed two medications: one to treat his symptoms of paranoia and hearing voices, and another to treat his symptoms of depression.  Id.  On March 8, 2019, Lindsay began to receive both medications.  Id. at 35 ¶ 88.

## IV.   DISCUSSION

Defendants Yesu and Brennan argue that Lindsay failed to properly or fully exhaust remedies available under State of Connecticut Department of Correction Administrative Directive 8.9 as to the claim that they were deliberately indifferent to mental health needs during his confinement at Corrigan from November 2018 to February 2019.  Defendants Yesu and Brennan argue further that, even if Lindsay had fully exhausted his available administrative remedies, he has failed to assert facts or provide evidence to state a claim that they were deliberately indifferent to his need for mental health treatment.  Finally, they argue that they are entitled to qualified immunity.

A.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes."  Porter v. Nussle,

7

534 U.S. 516, 532 (2002). The Supreme Court has observed that "[t]he PLRA's exhaustion requirement is designed to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 524-25; see also Jones v. Bock, 549 U.S. 199, 217-19 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.") (citing Woodford v. Ngo, 548 U.S. 81, 88-91 (2006)).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks.  See Booth v. Churner, 532 U.S. 731, 741 (2001).  Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court.  See Woodford, 548 U.S. at 90-91, 93 (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural rules . . . .").  An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable.  See Ross v. Blake, 578 U.S. 632, 641-42 (2016).  The Supreme Court described three situations in which official prison administrative remedies might be unavailable because the procedures could not be used by an inmate to obtain relief for the conduct or conditions complained about.  Id. at 643-644.  First, an administrative remedy may be unavailable when "it operates as a

8

simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." Id. (citations omitted).  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Exhaustion of administrative remedies is an affirmative defense.  Thus, the defendants bear the burden of proof. See Jones, 549 U.S. at 216.  On November 18, 2020, the defendants filed their Answer to the Complaint raising the defense of failure to exhaust administrative remedies. See Answer (Doc. No. 20).  Once the defendants establish that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must demonstrate that the administrative remedy procedures were not available to him. See White v. Velie, 709 F. App'x 35, 36–39 (2d Cir. 2017) (summary order) ("Once defendants have met their initial burden of demonstrating that a grievance process exists, however, a plaintiff bears the burden of 'demonstrat[ing] that other factors . . . rendered a nominally available procedure unavailable as a matter of fact.'") (quoting Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) and citing Ross, 136 S.Ct. at 1859).

Defendants, in their undisputed Statement of Material Facts,[4] have offered

---

[4]  Because Lewis has failed to respond to the defendants' Local Rule 56(a)1 Statement, the facts therein are deemed admitted. See D. Conn. L. Civ. R. 56(a)1.

evidence that the administrative remedies for the provision of health care to inmates by medical providers are set forth in State of Connecticut Department of Correction Administrative Directive 8.9, entitled Administrative Remedy for Health Care See Defs.' L.R. 56(a)1, ¶ 7; Ex. D, Admin. Dir. 8.9, Doc. No. 31-4.  Thus, claims related to deliberate indifference by a medical provider, such as a nurse, physician, or health services administrator, to an inmate's medical or mental health condition or need are subject to the Administrative Remedy for Health Care procedure set forth in Administrative Directive 8.9.  Id.  Administrative Directive 8.9 was in effect when Lindsay sought mental health treatment from Defendants Yesu and Brennan during his confinement at Corrigan from November 8, 2018 to February 7, 2019.  See Ex. D, Admin. Dir. 8.9 (in effect as of July 24, 2012).  It is evident from the January and April 2019 requests for health service reviews listed on the Administrative Remedies log filed by the defendants in support of their Motion for Summary Judgment, that the plaintiff was familiar with the Administrative Remedies procedures set forth in Directives 8.9 during his confinement at Corrigan.  See Defs.' L.R. 56(a)1, ¶ 20-22, 25; Ex. C, Health Services Review Grievance Log (Doc. No. 31-3).

Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the provision of medical, dental, or mental health care to an inmate: (1) Diagnosis and Treatment issues and (2) Administrative health care issues involving a procedure, practice, policy, or the improper conduct of a health services provider.  See Defs.' L.R. 56(a)1, ¶ 7; Ex. D, Admin. Dir. 8.9(9)(A) & (B).

10

An inmate seeking review of an issue involving a diagnosis or treatment or an administrative health care issue must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor.  Ex. D, Admin. Dir. at 8.9(10).  The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request.  Id.  If the informal resolution of the inmate's health care issue is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review by filing the Inmate Administrative Remedy Form, CN 9602.  Id. at 8.9(11) & (12).  In completing the form, the inmate must check off either the box labeled "Diagnosis/Treatment" if the issue involves a diagnosis or treatment of a medical, mental health, or dental condition, or the box labeled "All Other Health Care Issues" if the issue involves an administrative matter involving health care.  Id.

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental, or mental health condition, the Health Services Review Coordinator must schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible.  Id. at 8.9(11)(A).  If, after the appointment, the physician, dentist, psychologist, psychiatrist or APRN concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy.  Id.  If the physician, dentist, psychologist, psychiatrist or APRN reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide

11

the appropriate diagnosis or treatment or refer the case to the URC for authorization indicating the need for different treatment.  Id. at 8.9(11)(B).

If the inmate seeks review of an administrative health care issue, the health services coordinator is required to evaluate, investigate, and decide the matter within thirty days.  Id. at 8.9(12)(A).  If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision.  Id. at 8.9(12)(B).  The health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal."  Id. at 8.9(12)(C).  If the issue being raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receiving the decision from the health services provider or designated facility health services director.  Id. at 8.9(12)(D).

In her declaration in support of the Motion for Summary Judgment, Nurse Brennan, as the Health Services Administrative Remedies Coordinator at Corrigan, states that she reviewed the electronic Administrative Remedies log covering the period from November 10, 2018 through May 7, 2019, and found that, during Lindsay's confinement at Corrigan from November 8, 2018 to February 7, 2019, he submitted two requests for Health Services Review seeking review of a mental health care issue, one request for Health Services Review seeking review of a medical issue, and one grievance seeking review of an administrative issue.  See Defs.' L.R. 56(a)1 ¶¶ 19-21; Brennan Decl. ¶¶ 17-18 , Ex.B, (Doc. No. 34-1); Administrative Remedies log, Ex. C, (Doc. No. 31-3).

12

In a request for Health Services Review received on January 15, 2019, Lindsay sought review of administrative issues or the conduct of mental health employees involving the delay in treatment of his mental health conditions by Dr. Yesu and the failure of Nurse Brennan to confirm that, prior to his incarceration, a medical provider had prescribed medications to treat his mental health conditions. Administrative Remedies Log at 3.  On January 15, 2019, the reviewer denied the request.  Id.

In a grievance received on April 18, 2019, Lindsay sought treatment for his mental health conditions.  Id.  An administrative remedies coordinator forwarded the grievance to Health Services Administrator Ronald Labonte.  Id.  Labonte noted that the request sought mental health treatment but had been filed as a grievance rather than a request for Health Services Review.  Id.  Lindsay acknowledges in his Complaint that, in April 2019, he filed a grievance pertaining to the denial of treatment and medications for his mental health condition by Dr. Yesu and Nurse Brennan.  Compl. at 40 ¶ 94. Lindsay asserts that, on April 29, 2019, he received the grievance back from Labonte marked returned without disposition and with an instruction that he re-file it as a request for Health Services Review.  Id.  Because Lindsay was receiving treatment and medication for his mental health conditions from providers at MacDougall-Walker at that time, he did not re-submit the grievance as a request for Health Services Review.  Id.

The defendants argue that Lindsay did not fully exhaust the claims included in the January 15, 2019 request for Health Services review related to the delay in the provision of mental health treatment by Dr. Yesu and the failure of Nurse Brennan to confirm that mental health providers in the community had prescribed medications to

13

him prior to his incarceration because he did not appeal the denial of the request for review of these administrative health care claims as permitted by Administrative Directive 8.9(12).  The defendants contend that Lindsay did not properly exhaust the claim pertaining to the denial of mental health treatment by Dr. Yesu and Nurse Brennan that was included in the April 18, 2019 grievance because it was returned to him without disposition, and he did not re-file it as a request for a Health Services Review of a health care issue under Administrative Directive 8.9(11) or (12) as instructed by Health Services Administrator Labonte.  Lindsay has not come forward with any evidence to dispute these assertions.  Nor are there any allegations or facts or evidence to suggest that the health care administrative remedies provided in Administrative Directive 8.9 were unavailable to Lindsay during or after his confinement at Corrigan.

Defendants Yesu and Brennan have met their burden of demonstrating the absence of a disputed material fact regarding Lindsay's failure to exhaust his available administrative remedies as to the claim of deliberate indifference to mental health needs asserted against them.  The Motion for Summary Judgment is granted on the ground that, prior to commencing this action, Lindsay neglected to properly and fully exhaust his available administrative remedies under Administrative Directive 8.9 as to the Eighth Amendment claim that Dr. Yesu and Nurse Brennan were deliberately indifferent to his mental health needs during his confinement at Corrigan from November 2018 to February 2019.

B.    Remaining Arguments

Defendants Yesu and Brennan argue in the alternative that Lindsay has asserted no facts to suggest that he suffered from a serious mental health condition during his confinement at Corrigan in 2018 and 2019 or that they disregarded his need for mental health treatment.  Because the court has granted the Motion for Summary Judgment on the ground that Lindsay did not exhaust his available administrative remedies as to the Eighth Amendment claim asserted against the defendants, it is unnecessary to reach this additional argument or the argument that the defendants are entitled to qualified immunity.

V.    CONCLUSION

The Motion for Summary Judgment filed by Defendants Yesu and Brennan, (Doc. No. 31), is GRANTED.  The Clerk is directed to enter judgment for the defendants and to close this case.

SO ORDERED

Dated at New Haven, Connecticut this 7th day of December, 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

15